IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 18-252 |
| v. | : | CRIM. NO. 18-315-1 |
| MICHAEL HARRIS | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Michael Harris stands before this Court for sentencing for his convictions for drug trafficking offenses arising out of his involvement in the Hilltop Drug Trafficking Group ("DTG"), an organization that distributed large amounts of heroin and other narcotics in West and Southwest Philadelphia and Upper Darby and is responsible for multiple heroin overdose deaths, and his unlawful possession of a firearm in May 2018.

The government and the defendant entered into a guilty plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in which the parties agreed that the following specific sentence is the appropriate disposition of the cases: a sentence within a range of 210 to 234 months' (17.5 to 19.5 years') imprisonment, a 6-year period of supervised release, a $1,900 special assessment, and a fine, if any, as determined by the Court.

The government explains below its view of the proper consideration in this case of the advisory Guideline range and of the Section 3553(a) factors. For the reasons set forth below, the government asks this Court to impose a sentence within the range of 210 to 234 months' imprisonment.

I.      **BACKGROUND**

On September 26, 2018, defendant Michael Harris and 19 co-conspirators were charged in a Superseding Indictment for their participation in the Hilltop Drug Trafficking Group ("DTG"), a drug trafficking organization that operated between approximately 2013 and 2018 primarily in West and Southwest Philadelphia and Upper Darby. In the Superseding Indictment, Harris was charged with conspiracy to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, 28 grams or more of cocaine base ("crack"), a Schedule II controlled substance, oxycodone, a Schedule II substance, and alprazolam, a Schedule IV controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C) and 846 (Count 1); and with 137 additional counts of distribution of controlled substances, including one count of distribution of heroin resulting in the death of Jeremy Alterio (Count 94).

Harris also was charged separately in Criminal Number 18-252 with one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (Count One).

On February 1, 2023, the defendant entered a guilty plea before this Court pursuant to a Rule 11(c)(1)(C) guilty plea agreement with the government. The defendant pleaded guilty to Count One of the Indictment under Criminal Number 18-252. With respect to Criminal Number 18-315-1, the defendant pleaded guilty to the following counts of the Superseding Indictment: Count 1, charging conspiracy to distribute one kilogram or more of heroin, and detectable amounts of cocaine base ("crack"),[1] oxycodone, and alprazolam, in violation of 21 U.S.C. §§

---

[1] The detectable amount quantity of cocaine base to which the defendant pleaded guilty is a lesser-included drug quantity of Count 1. This has no impact on the mandatory minimum sentence associated with Count 1 (10 years' imprisonment) because of the heroin drug quantity,
*continued . . .*

841(a)(1), (b)(1)(A), (b)(1)(C) and 846; 12 counts of distribution and aiding and abetting the distribution of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Counts 3, 5, 7, 9, 11, 13, 36, 68, 73, 93, 96, and a lesser-included offense of Count 94), three counts of distribution and aiding and abetting the distribution of heroin within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Counts 37, 69, and 74), one count of distribution and aiding and abetting the distribution of a mixture and substance containing a detectable amount of fentanyl and cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Count 63), one count of distribution and aiding and abetting the distribution of fentanyl and cocaine base ("crack") within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2 (Count 64), one count of distribution and aiding and abetting the distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Count 92), one count of distribution and aiding and abetting the distribution of 3-methylfentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Count 158), and two counts of maintaining and aiding and abetting the maintenance of a drug house, in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2 (Counts 162 and 163).[2]

During his guilty plea colloquy, the defendant admitted to participating in the Hilltop DTG between approximately 2014 and 2018. Harris took over the primary leadership of the DTG after Alexander Burnett (who remains a fugitive) went to prison in late October 2015.

---

and it has no impact on the guideline calculations for the defendant.

[2] Pursuant to the guilty plea agreement, at the time of sentencing, the government will move to dismiss the remaining counts in the Superseding Indictment, Criminal Number 18-315, against Harris: Counts 4, 6, 9, 12, 14 through 35, 38 through 62, 65 through 67, 70 through 72, 75 through 91, 95, 97, 98, 100 through 134, 137, 152, 153, and 159.

During this time, Harris was the primary operator of the of the "Chico" phone, which drug customers called to place orders for illegal narcotics, and he was responsible for the distribution of more than one kilogram of heroin into the community. As part of his guilty plea, the defendant also admitted to distributing ten bundles of heroin to a regular, bulk quantity heroin customer on April 6, 2016. This customer, Jason Dunlap, redistributed (sold) some of this heroin to 30-year-old Jeremy Alterio in the State College area, and Alterio suffered a fatal overdose after injecting himself with the drugs.

In May of 2016, prior to turning himself in to serve a Delaware County prison sentence for trafficking heroin as part of this conspiracy, Harris arranged for co-defendants Paul Robinson and, to a lesser extent, Hyneef Harvey, to take over control of the Chico phone. When Harris was released from prison approximately six months later, he resumed his operation of the Chico phone.

On May 17, 2018, the defendant was found in possession of a loaded .40 caliber firearm at the time DEA executed a federal search warrant for a residence associated with co-defendant Hyneef Harvey in the Germantown area of Philadelphia. The defendant was arrested and charged with this offense pursuant to a federal complaint and warrant, and he has remained in federal custody since then.

A sentencing hearing is scheduled for July 19, 2023.

## II.  SENTENCING CALCULATION

### A.  Statutory Maximum Sentences

In **Criminal No. 18-252,** Count One, possession of a firearm by a felon, 10 years' imprisonment, up to 3 years of supervised release, a $250,000 fine, and a $100 special assessment.

In **Criminal No. 18-315-1,** Counts 36, 63, 68, and 73 merge into Counts 37, 64, 69, and 74 for sentencing purposes, and the Court may impose the following statutory maximum and mandatory minimum sentences:

Count 1, conspiracy to distribute one kilogram or more of heroin, cocaine base ("crack"), oxycodone, and alprazolam, life imprisonment with a 10-year mandatory minimum term of imprisonment, a mandatory minimum term of 5 years up to a lifetime of supervised release, a $10,000,000 fine, and a $100 special assessment;

Counts 3, 5, 7, 9, 11, 13, 93, 96, and a lesser-included offense of Count 94, distribution and aiding and abetting the distribution of a mixture and substance containing a detectable amount of heroin, 20 years' imprisonment, a mandatory minimum 3 years up to a lifetime of supervised release, a $1,000,000 fine, and a $100 special assessment per count;

Counts 37, 69, and 74, distribution and aiding and abetting the distribution of a mixture and substance containing a detectable amount of heroin within 1,000 feet of a school, 40 years' imprisonment with a 1-year mandatory minimum term, a mandatory minimum 6 years up to a lifetime of supervised release, a $2,000,000 fine, and a $100 special assessment per count;

Count 64, distribution and aiding and abetting the distribution of a mixture and substance containing a detectable amount of fentanyl and cocaine base ("crack") within 1,000 feet of a school, 40 years' imprisonment with a 1-year mandatory minimum term, a mandatory minimum 6 years up to a lifetime of supervised release, a $2,000,000 fine, and a $100 special assessment;

Count 92, distribution and aiding and abetting the distribution of a mixture and substance containing a detectable amount of fentanyl, 20 years' imprisonment, a mandatory minimum 3 years up to a lifetime of supervised release, a $1,000,000 fine, and a $100 special assessment;

Count 158, distribution and aiding and abetting the distribution of a mixture and

substance containing a detectable amount of 3-methylfentanyl, 20 years' imprisonment, a mandatory minimum 3 years up to a lifetime of supervised release, a $1,000,000 fine, and a $100 special assessment;

Counts 162 and 163, maintaining and aiding and abetting the maintenance of a drug house, 20 years' imprisonment, up to 3 years of supervised release, a $500,000 fine, and a $100 special assessment per count.

The Total Maximum and Mandatory Minimum Sentence for Both Cases is: Life imprisonment with a 10-year mandatory minimum term of imprisonment; a mandatory minimum term of 6 years up to a lifetime of supervised release, a $33,250,000 fine, and a $1,900 special assessment.

### B.     Criminal History Category

The government agrees with the Probation Office's calculation of the defendant's total criminal history score of 0 points, which places him in Criminal History Category I. PSR ¶¶ 109-112.

### C.     Sentencing Guidelines Calculation

The government agrees with the Probation Office's calculation of the defendant's advisory sentencing guideline range of life imprisonment, based on a final offense level of 44 (43) and a criminal history category of I. PSR ¶¶ 154, 98-107.

### D.     Impact of the Guilty Plea Agreement

As further discussed below, the government asks this Court to impose a sentence in the agreed upon range of 210 to 234 months' imprisonment. Although a sentence in this range constitutes a downward variance from the sentencing guideline range, a sentence in this range is warranted in light of consideration of the § 3553(a) factors, and the defendant's acceptance of

responsibility. A sentence in this range is a significant, lengthy prison sentence for anyone, particularly for the defendant, who has never before served a significant prison sentence and falls into Criminal History Category I. While the defendant possessed a firearm at the time of his arrest, there is no evidence that he participated in any acts of violence or shootings on behalf of the DTG. As further discussed below, a sentence in this range is also fair and just when compared to the sentences earned by his co-conspirators (ranging from just a few days to 188 months' imprisonment) and appropriately reflects his level of culpability and leadership of the DTG, in addition to his personal history and characteristics.

### III. ANALYSIS

A thorough consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that a sentence in the range of 210 to 234 months' imprisonment is appropriate.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

The Guidelines, however, are but one of seven factors considered under 18 U.S.C. § 3553(a). The Court must consider all the sentencing factors and may not treat the Guidelines as either mandatory or presumptively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2009).

Here, the government submits that the guideline range of life imprisonment is unreasonable, and the parties' guilty plea agreement accounts for this. The defendant has zero prior criminal history points, but faces the same guidelines that a career offender in Criminal History Category VI would face if convicted of the same crimes. The defendant accepted responsibility by pleading guilty, sparing the family of Jeremy Alterio from a trial and the litigation risk that comes with it. By accepting responsibility, the defendant also conserved prosecutorial, agency, and judicial resources by avoiding an approximately month-long trial in which hundreds of wiretap calls would have been presented to the jury and dozens of witnesses would have been called to testify, including cooperating witnesses whose safety would have been further compromised by testifying, medical experts, other civilians, and numerous law enforcement witnesses. Despite this acceptance of responsibility, the defendant faces the same sentencing guideline range that he would have faced if he had been convicted of these offenses after a trial. For all of these reasons, a downward variance from the sentencing guideline range, as contemplated by the parties' guilty plea agreement, is a fair and just sentence.

The other sentencing factors for the Court to consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) any policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide

restitution to any victims of the offense. 18 U.S.C. § 3553(a). Ultimately, the sentencing Court has an "overarching duty to impose a sentence that is sufficient but not greater than necessary to accomplish the goals of sentencing." *United States v. Pepper*, 131 S. Ct. 1229, 1243 (2011).

In accordance with the parties' guilty plea agreement, a sentence in the range of 210 to 234 months' (17.5 to 19.5 years') imprisonment is reasonable, fair, just, and sufficient but not greater than necessary to accomplish the goals of sentencing.

    A.    **<u>Consideration of the 3553(a) Factors</u>**

        1.    <u>The nature and circumstances of the offense</u>

The defendant's offenses are serious. He was involved in a drug trafficking conspiracy for approximately four years. During much of this time, the defendant led the organization, and the DTG was known for selling dangerously potent heroin, sometimes laced with fentanyl and fentanyl analogues, which caused several overdose deaths between 2014 and 2016, including that of Jeremy Alterio. Although the defendant's heroin distribution activities were interrupted by his six months of incarceration in Delaware County, beginning in May of 2016, the defendant took steps to maintain the continuity of the drug trafficking business during his incarceration and resumed his activities upon release, undeterred by having spent months in prison for selling heroin.

The Philadelphia region is plagued by drug trafficking and gun violence and is burdened by the social and human costs that flow from the trafficking and abuse of highly-addictive drugs, like heroin, and the gun violence that often accompanies drug trafficking groups' interests in defending their territories and products. The defendant's activities contributed to both of these ongoing problems in our region.

The defendant's drug trafficking also had a tremendous and direct impact on the family and loved ones of Jeremy Alterio. He was the only child of Veronica Gower, who provided a written victim impact statement in a related case,[3] which the government has attached here as Exhibit B, filed under seal. The government has also attached a written victim impact statement submitted in a related case by Alterio's cousin, Andrea Royer, as Exhibit C, filed under seal. At 30 years old, Jeremy Alterio was well-liked, just as he had been as a child, and he had a large group of friends. Ms. Gower reports that his funeral was "standing room only" because so many people loved him and cared about him. He had struggled with gender identity issues since he was young but, shortly before his death, he started "coming out" to his close friends and family as transgendered, and his mother and many friends accepted the news and supported him in his transition. He had also been battling a heroin addiction for quite some time, which he managed to conceal from his mother until after his death.

 2. <u>The history and characteristics of the defendant</u>

The defendant is 30 years old and has been incarcerated since he was 25 years old. He began his involvement in the Hilltop DTG when he was only 21 years old, and he has a limited

---

[3] On February 9, 2023, in Criminal Number 17-305, this Court sentenced Jason Dunlap to 144 months' imprisonment. Dunlap was the individual who directly supplied Jeremy Alterio with the lethal, fentanyl-laced heroin after purchasing a bulk quantity of heroin from Harris at the Park Lane Apartments in Upper Darby for resale in the State College area.

Ms. Gower originally intended to attend Dunlap's sentencing, but she informed the government on the morning of the hearing that she was too overwhelmed by emotion to attend. The undersigned AUSA has had repeated contact with Ms. Gower since being assigned the case in 2019, and U.S. Attorney's Office victim/witness coordinators have had extensive contact with her since 2017. Ms. Gower was notified and consulted regarding the guilty plea negotiations between the government and counsel for Michael Harris, and she is accepting of the resolution contemplated by the parties' guilty plea agreement. She does not plan to attend the sentencing hearing.

"under-the-table" employment history prior to becoming involved in the DTG. PSR ¶ 143. The defendant and his mother report significant substances abuse problems of his own that began when he was in elementary and middle school, worsened as he got older, and have continued, to some extent, even while he has been incarcerated. PSR ¶¶ 125, 133-139. The defendant has no criminal history aside from his drug trafficking activities related to this conspiracy, for which he only served a 6-month prison sentence in Delaware County. PSR ¶ 109. Accordingly, a sentence in the range of 210 to 234 months' imprisonment in connection with these federal offenses will be the first meaningful sentence imposed on this defendant. To the defendant's credit, he has not tried to make excuses for his conduct or blame others, telling the presentence investigator, "I wasn't raised that way. I picked money over school. People were calling me with $1,000 to buy heroin. The money controlled me and took me down the wrong path, a road I wasn't supposed to go on." PSR ¶ 126.

       3.   <u>The seriousness of the offense, respect for the law, and just punishment</u>

A sentence in the range of 210 to 234 months' imprisonment is a significant sentence. It "reflect[s] the seriousness of the offense, promote[s] respect for the law, and provide[s] just punishment for the offense." § 3553(a)(2).

       4.   <u>Deterrence and consistency in sentencing</u>

The recommended sentence of incarceration affords adequate deterrence to others who would commit similar offenses, and protects the public from further crimes of the defendant, for at least as long as he remains incarcerated. The defendant will be nearly 50 years old by the time he completes the sentence. § 3553(a)(2).

A sentence in the range of 210 to 234 months' imprisonment also would be the highest sentence imposed among co-defendants in this case to date, accounting for the defendant's

leadership role in the organization and his culpability in the overdose death of Jeremy Alterio. *See* Exhibit A, Chart of Sentences Imposed to Date. Notably, the defendant has a lower criminal history score than all of his co-conspirators, but will still receive the highest sentence of the DTG members based on his role and the seriousness of his offenses. A sentence in the recommended range also accounts for the fact that there is no evidence in the case that Harris was responsible for acts of gun violence.

     5. <u>Other considerations</u>

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner… ." § 3553(a)(2)(D). The defendant can receive and benefit from vocational training and substance abuse treatment while incarcerated. Restitution is not an issue in this case.

**IV.   CONCLUSION**

For these reasons, the government requests that the Court impose a sentence in the range of 210 to 234 months' imprisonment, in accordance with the parties' guilty plea agreement, to be followed by 6 years of supervised release.

          Respectfully submitted,

          JACQUELINE C. ROMERO
          United States Attorney


          */s/ Kelly Harrell*
          KELLY HARRELL
          EVERETT WITHERELL
          Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by email and through the electronic filing system upon counsel for defendant:

    Nino Tinari, Esq.

                                               */s/ Kelly Harrell*
                                               KELLY HARRELL
                                               Assistant United States Attorney

Date: July 12, 2023